## GLENN vs. BLACK et al.

1. In a suit by the Sheriff for the use of a plaintiff in execution, against a purchaser at Sheriff's sale, under the Act of the 27th December, 1831, *Cobb's Digest*, 513, the execution under which the sale was made, must be introduced in evidence, or its absence satisfactorily accounted for.

2. If neither put in evidence or accounted for, a verdict for plaintiff would be without sufficient evidence to support it.

3. The Sheriff, who is plaintiff in such a case, is an incompetent witness, unless indemnified against the cost. Otherwise as to a Deputy Sheriff, who neither made the sale, nor is a party to the suit.

4. The fi. fas. in favor of the usees, named in the declaration, against the defendant whose property was sold, are proper evidence in the cause to show their interest.

5. It is a misjoinder in such an action, to introduce as usees of the plaintiff, several plaintiffs in execution, whose interest is of the same nature, and who all claim a participation in the fund sued for; and if such be omitted, through mistake or accidentally, the omission may be supplied by amendment.

6. No recovery can be had under this Statute in favor of a plaintiff in execution, who negligently or covinously failed to place his execution in the Sheriff's hands, until after the sale, against a purchaser, himself a junior plaintiff in execution, who levied on the property, brought it to sale, ascertained what liens were in the Sheriff's hands—purchased only to secure his own debt, or a portion of it, and after the sale offered to settle with the Sheriff, by paying off all fi fas in his hands at the time of the sale, older than his own, and by crediting the remainder on his own execution; nor in favor of any plaintiff, whose execution the purchaser offered to pay after the sale.

7. This case is distinguished from that of a contest for money actually in the Sheriff's hands.

Assumpsit, in Chattooga Superior Court. Tried before Judge WALKER, at the March Term, 1860.

This was an action brought by Charles D. Black, as sheriff of Chattooga county, for the use of divers judgment creditors of Little B. Strange, against Jesse A. Glenn, to recover the purchase price of a lot of land sold by said sheriff, at sheriff's sale, as the property of said Strange, and bid off by said Glenn.

On the trial of the case in the Court below, the evidence disclosed the following state of facts:

On the first Tuesday in January, 1857, the plaintiff sold at sheriff's sale, in due form, lot of land number 30, in the

---

**FAILURE TO COMPLY WITH BID—REMEDIES OF SHERIFF-PARTIES.** "**Where a purchaser at a sheriff's sale fails to comply with his bid, the sheriff may sue him** for the amount thereof, **or may re-sell** the property **and sue him for the difference** between the original bid and what the property brings at the second sale.    *    *    *    *    In such a suit, the sheriff is the party plaintiff, and **parties interested in the fund are properly joined as usees in the action;** nor is there any misjoinder because the sale took place under two mortgage fi. fas., the plaintiffs in both of which are made usees of the sheriff's suit." Sharman *v.* Walker, 68 Ga. 148 (1, 2), 149, 152; Civil Code, §§5466-7.

"**Where a sheriff** lawfully sold personalty under an execution, and

5th district of the 4th section of originally Cherokee, then Chattooga county. The lot of land was sold as the property of Little B. Strange, by virtue of a writ of *fieri facias,* issued from the Superior Court of Chattooga county, in favor of Leander W. Crook, against Little B. Strange, and was bid off by the defendant, Jesse A. Glenn, at the sum of $325, who requested the sheriff to put the land down to Crook, whom he represented. Sheriff refused. Whilst the sale was going on, Glenn was told by the deputy sheriff that there were other older *fi. fas.* in the office; to which Glenn replied that he would pay them off. When the land was knocked off, Glenn announced to the sheriff that he was ready to settle his bid, and proposed to pay off the older *fi. fas.* in the sheriff's hands at the time of the sale, and appropriate the balance of the bid as a credit upon his own *fi. fa.* From some cause, the sheriff did not make the settlement at that time. Afterwards, and on the same day, there were placed in the hands of the sheriff to claim the money, the following *fi. fas.* from a Justice's Court of Chattooga county against the said Little B. Strange, to wit: 2 in favor of William E. Adger & Co.; 2 in favor of McKenzie, Cadow & Co.; 3 in favor of Thomas G. Barker; 1 in favor of John Taylor; 1 in favor of Branon & Myers; 1 in favor of Kerrs and Hope; 1 in favor of T. T. Hopkins; and 1 in favor of James McClung. After these *fi. fas.* were put into the sheriff's hands, he then told Glenn that the calculations were made, and that he was ready to settle. When Glenn saw these Justice's Court *fi. fas.* he told the sheriff that he would not pay them; that he would only pay off such *fi. fas.* as were in his hands at the time of sale, and credit the balance on his own *fi. fa.* The sheriff declined to settle on those terms. No special or formal demand for the amount of the bid was ever made. The only *fi. fas.* levied on the land, and in the sheriff's hands at the time of the sale, except that of Crook, under which it was sold, were those in favor of Penn, and of Lucinda Arnold. Those *fi. fas.* were in evidence on the trial, as were the Justice's Court *fi. fas.* aforesaid; but the *fi. fa.* in favor of Crook, under which the land was sold, was neither put in evidence, nor its absence accounted for. The sheriff testified, that he did not sell the land under any *fi. fa.* in evidence. When the plaintiff himself, and his deputy, were offered as witnesses, counsel for defendant objected to their testifying, on the

upon the purchaser's refusal to comply with the terms of the sale the property was **resold at his risk and brought a lower price,** any absolutely **necessary and proper expense attendant upon the keeping and storage of the property** pending the readvertisement and sale of the same **may be treated as increasing the deficiency for which the original purchaser was liable:** and an action by the sheriff for the total deficiency, including this expense and the difference in price, is, when the sum of

ground of interest. So far as the plaintiff was concerned, it was proposed to indemnify him against the costs of the case, and the trial proceeded as if the indemnity had been given, though it was not in fact given. The Court overruled the objection as to the deputy sheriff, and defendant excepted.

When the plaintiff offered the aforesaid *fi. fas.* in evidence, (the *fi. fa.* in favor of Crook being absent and unaccounted for) counsel for defendant objected to the testimony, on the ground that the land was not sold under either of said *fi. fas.*

The objection was overruled by the Court, and defendant excepted.

During the trial, the plaintiff proposed to amend his declaration by inserting, as additional usees to the plaintiff, the names of William Penn, Lucinda Arnold and others; to which amendment counsel for the defendant objected, upon the ground that the same would be a misjoinder of parties, as the interests of the persons whose names it was proposed to insert were adverse to each other, and on the ground that the land was not sold under the *fi. fas.* in favor of any of said persons, except Penn.

The Court overruled the objection, and defendant excepted.

After the testimony was closed, the defendant's counsel asked the Court to charge the jury—

1. That the plaintiff was not entitled to recover in this case, not having shown any valid *fi. fa.* under which the land mentioned in the declaration was sold, and not having accounted for the absence of such *fi. fa.*

2. That the jury could not presume a sale of the land under any of the *fi. fas.* read in evidence, on account of a levy made in 1855, especially when the sheriff himself testifies that he did not sell the land by virtue of any of the *fi. fas.* submitted in evidence.

3. That the various usees of the plaintiff could not join in the same action to recover the fund sued for, when it was apparent to the Court and jury that there were other parties entitled to participate in the fund, or when it was apparent that no valid sale had been made to authorize a recovery.

4. That a deed must have been tendered, and a demand of the bid made, before the plaintiff can recover.

The presiding judge declined to give said charges, but charged the jury:

---

both items exceeds $100, maintainable in a court which, relatively to actions of this character, has jurisdiction in cases where the principal sum claimed, exclusive of interest, exceeds $100." Barnes *v.* Bluthenthal & Bickart, 101 Ga. 598 (1), 601.

"**Though the holder of an execution,** under which property is about to be sold, **be, before the sale, informed by the levying officer that there in no other execution in his hands** to claim the proceeds of the

That it must be shown that the defendant was required to comply with the terms of the sale and failed, or refused to do so; that the plaintiff must show a sale by the sheriff under an execution which must be produced, or its absence accounted for, and that the defendant was the purchaser; that the possession by the sheriff of *fi. fas.* with levies on the land at the time of the sale, was evidence which the jury might consider to show that he was legally seized of the land, and authorized to sell it; and that though they could not presume a sale from the levies, yet it was evidence for them, and they must determine from all the evidence in the case, whether any sale under a valid *fi. fa.* had been proved; that the *fi. fas.* introduced were admitted for the purpose of showing that the usees were interested in the suit, and are not mere interlopers; that the jury must recollect the testimony, and from that determine whether there was any sale made under them or any of them. If there was any such sale made under either of said *fi. fas.,* then the jury would be authorized to find that a sale had been proven; that parties have a right to claim the proceeds of the sale at any time before the money is paid out by the sheriff. A levy on the land and a sale under such levy must be proved; the sale need not be proved by writing, but it must appear that the sale took place by virtue of a valid execution; that if the jury find the principal for the plaintiff, interest was also due from the day of sale.

The charge as given, and the refusal to charge as requested, were excepted to by defendant's counsel.

The jury returned a verdict for the plaintiff for $325, with interest from the first Tuesday in January, 1857.

Counsel for defendant then moved for a new trial, on the grounds—

1. That the verdict is contrary to the charge of the Court.

2. That it is contrary to evidence, and without evidence, and decidedly against the weight of evidence.

3. That the Court erred in allowing the sheriff and his deputy to testify in this case.

4. That the Court erred in admitting in evidence the *fi. fas.* objected to.

5. That the Court erred in allowing the plaintiff to amend his writ, over the objections of defendant's counsel.

sale, yet **if, after the property is sold to such holder, an execution founded upon a judgment of superior dignity** to that upon which his execution was issued be **placed in the officer's hands prior to a settlement between him and the purchaser, or a timely offer by the latter to comply with his bid,** he can **not be relieved therefrom** merely because, by reason of the information received before the sale, he bid off the property solely for the purpose of having the proceeds of the

6. That the Court erred in charging as he did, and in refusing to charge, as requested by defendant's counsel.

The presiding judge overruled the motion for a new trial, and such refusal is the error complained of in this case.

L. W. CROOK, by GLENN, for plaintiff in error.

A. R. WRIGHT, for defendant in error.

*By the Court.*—JENKINS, J., delivering the opinion.

1. The first exception presented by the record in this case is, that the verdict is contrary to the charge of the Court.

The Court charged the jury, "that the plaintiff must show a sale, by the sheriff, under an execution, which must be produced, or its absence accounted for." The brief of evidence in the record shows, that the land was sold under the execution in favor of Leander W. Crook, and under no other, though two others which were in evidence had been levied on the land more than a year previously, but were permitted to lie inactive in the sheriff's hands. After all the executions had been put in evidence, the sheriff testified, positively, that he did not sell the land under any of the *fi. fas.* in evidence. The execution of Crook was not in evidence, nor was its absence accounted for. The charge of the Court on this point was certainly correct, and the verdict of the jury was contrary to it. This was one of the grounds on which the defendant moved for a new trial, and the Court erred in not granting that motion.

This would itself be a sufficient reason for sending the cause back to be re-tried, but as there is a more important question in reserve, which must recur on any subsequent trial, we deem it proper to dispose of all the questions raised by the bill of exceptions.

2. Having held, in considering the first exception, that the execution under which the sheriff sold the land, was an essential part of plaintiff's proof, unless its absence were satisfactorily accounted for, and secondary evidence supplied; and such proof being wanting, it follows that the verdict was without sufficient evidence to support it, and this was ground for setting aside the verdict.

3. The sheriff was an incompetent witness, unless indem-

sale, less expenses and costs, credited upon his execution, and would not, in the absence of such information, have become the purchaser at all. The decision in the case of Glenn *v.* Black, 31 Ga. 393, bearing upon a similar question, will not be extended beyond its own peculiar facts." Atlanta Trust & Banking Co. *v.* Nelms, 115 Ga. 53 (4), 63.

**USEE IS THE REAL PARTY.** "In addition to the cases cited in the briefs of counsel, the following, together with others which might be cited from our Reports, show that **the usee and not the plaintiff is re-**

nified against costs. This seems to have been recognized by all parties, and the statement in the record is, that the plaintiff proposed to indemnify him (i. e., the usees or beneficiary plaintiffs), and the cause proceeded as though he had been indemnified; but in point of fact he had not been. All this amounts to a waiver on the part of the defendant below, and we did not understand him as insisting on this exception in this Court. No sufficient reason was suggested in the argument, and none occurs to us, for holding that the deputy sheriff was an incompetent witness. He was no party to the suit, could have no interest in the plaintiff's success, and was not in any way liable for costs. There was, therefore, no error in these rulings.

4. The several $fi. fas.$ in favor of the plaintiff's usees being offered in evidence, were objected to, and plaintiff in error excepts, that the Court erred in overruling the objection and admitting the $fi. fas.$ They were not offered or admitted for any purpose, other than to show the interest of the plaintiffs as usees, and for this purpose were not only proper, but necessary evidence. The Court did not err in admitting them.

5. The plaintiff, at the trial term, moved to amend his declaration by adding other usees than those originally named in it. This amendment neither introduced a new cause of action, nor in any way varied the liability of the defendant. Technically speaking, it did not change the party plaintiff. The sheriff is the party plaintiff; with him the contract set out in the declaration was made. The usees are introduced to show, in the language of the statute, who is, or are, interested in the enforcement of the contract. If any party having an interest identical with the usees named in the declaration, be accidentally omitted, it would be proper and just that the omission be supplied by amendment. It was argued that there was, by this amendment, a misjoinder of plaintiff's. But there was, in reality, after the amendment, but one plaintiff, viz.: the sheriff. He is the party authorized to sue. He has discretion in such cases, either to proceed against the recusant purchaser for the whole amount of his bid, or to resell the property, and hold him liable for any loss that may result.

There can be but one recovery for such failure, or refusal to comply with the terms of the sale, and as the Act provides that the sheriff shall sue for the use of the party interested, all persons so interested should be joined as usees. The

garded as the real party. Thus, in a suit in the name of the Governor for the use of sundry execution creditors on the official bond of the sheriff, where it appeared that the claims of the several usees were separate and distinct, it was held that there was a misjoinder of plaintiffs as well as distinct causes of action, and that the declaration. was for that reason bad. The Governor, for the use, etc., *v.* Hicks et al., 12 Ga. R. 189; Glenn *v.* Black et al., 31 Ib. 393; Sharman, sheriff, for the

money recovered, if any, goes into the sheriff's hands, and he is subject to the order of the Court, in distributing it among the usees. The amendment was properly allowed.

6. The sixth and last exception is, that the Court erred in the charge to the jury.

The chief objection under this exception, which brings up the most important question in the case, is to that part of the charge thus expressed: "That parties have a right to claim the proceeds of the sale at any time before the money is paid out by the sheriff." With this proposition as applied to money actually in the hands of the sheriff, we have in this case no concern, and must not be understood as dissenting from it in that sense. We, however, distinguish money in the sheriff's hands, from money for which he is compelled to sue, and the recovery of which may be resisted on various grounds. An idea seems to obtain, to a greater or less extent, that nothing more is necessary to insure a recovery under this statute, than to prove a sale by the sheriff with competent authority, and that the defendant made the last, or highest bid, and then failed, or refused to comply with the bid. In *Collier vs. Perkerson,* at the present term, we have given a different construction to the statute, holding that the Legislature did not intend to make the particular class of contracts embraced in its provisions more sacred than any other—did not intend to deny to the party sued a defence. Had this statute not been passed, the remedy of the usees would have been by bill in equity for a specific performance of the purchaser's contract. Were they now pursuing that remedy, the defendant *"might insist upon any matter which shows it to be inequitable to grant such relief."* 1st *Story's Equity,* §161. By our construction of the statute, the Legislature intended only to change the remedy—to make it more summary, and less expressive, leaving to the defendant all the defences of which he might in the other procedure have availed himself. If he can show that, owing to ascertained laches, or covinous concealment, or positive fraud of the party seeking to enforce the contract, he had been induced to purchase, when, with a full knowledge of all the circumstances of plaintiff's claim, and that it would be asserted, he would not have done so, he should not be held liable.

In the case at bar, the land was sold under Crook's execution. The defendant represented Crook as his attorney at

use, *v.* Walker, 68 Ib. 148. The last two cases impliedly, if they do not expressly, recognize the usees as the real parties to the action. According to §5105 of the Civil Code of 1895, when it becomes necessary for the purpose of enforcing the rights of a plaintiff, he may amend by substituting the name of another person in his stead, suing for his use." Wortsman *v.* Wade, 77 Ga. 656. And see Edwards *v.* Perryman, 18 Ga. 374, 377-8.

law, Crook not being present. The case stands, then, as though Crook, the plaintiff in execution, had been the purchaser, and were now the defendant below.

All the circumstances indicate that Crook's object was to procure satisfaction of his debt, or some part thereof, rather than to acquire title to the land. To secure this object, he was willing to purchase the land at its full value. He therefore caused a levy to be made on the land, and brought it to sale. Like a vigilant creditor, and a careful man, when the time of sale arrived, he ascertained what liens upon this land were in the sheriff's hands. Finding only two, there, viz.: the execution of Penn and Arnold (two of the usees) both of which had been levied on the land (though not pressing it to sale), and both of superior lien to his own, he determined for himself what price he would give for the land, knowing that so much of the purchase money as the two superior liens called for must be paid upon them, and reasonably calculating that the remainder would be credited upon his own *fi. fa.*, was induced to purchase. In the course of the bidding, he is informed by the deputy sheriff, who supposes he may be ignorant of the fact, that there are *in the sheriff's hands,* to claim the proceeds of the sale, older *fi. fas.* than his own. He replies, that he is aware of that, and would be prepared to pay them off, and have the balance of the purchase money credited on his own. Having purchased the property, he forthwith informs the sheriff that he is prepared to settle in that way. The sheriff makes no objection, but for some reason (probably pressure of other official business) defers the settlement to a later hour. At a subsequent time, on the same day, the sheriff informed the plaintiff in error that the calculations had been made, and he was ready to settle with him. They proceeded to a settlement, when the sheriff produced sundry Justices' Court *fi. fas.*, older than that of the purchaser, which had been placed in his hands to claim money subsequent to the sale. The purchaser then refused to pay money to be appropriated to the satisfaction of those *fi. fas.*, but again offered to pay all that might be due on the *fi. fas.* in the sheriff's hands at the time of the sale, of older date than his, and claimed to have the remainder credited on the latter. The sheriff declined to make such settlement, and this suit was instituted. There is no proof that the purchaser knew of the existence of those Justices' Court *fi. fas.*; and

had he known of their existence, he could not know but that they had been satisfied. He had used diligence to ascertain what liens were then brought forward to be asserted against the land about to be sold by his own diligence. Had those *fi. fas.* been placed in the sheriff's hands before the sale, he would have known it, and it is morally certain, he would not have become the purchaser; because his whole conduct shows that his object was not to acquire the land sold, but to secure his debt.

Why were not those Justices' Court *fi. fas.* placed in the sheriff's hands before the sale? Clearly, either from laches, or in the practice of a cunning stratagem to induce the levying and selling creditor to compete as a bidder, under the expectation of having the purchase money credited on his execution, thus substituting the land for the judgment debt. The fact that the executions were, so soon after the sale, placed in the sheriff's hands, is suggestive of the idea, that their owners were present with them in their pockets all the while, cunningly, rather than negligently, concealing their existence, and the use to be made of them. To us, it seems clear enough, that either by the laches or covin of the owners of those *fi. fas.*, the plaintiff in error was induced to make a purchase which he would not otherwise have made, and this constitutes a good defence against *their* attempt to coerce payment of the purchase money. As to those two usees whose *fi. fas.* had been levied on this land long anterior, and which were in the sheriff's hands at the time of the sale, the defence of the plaintiff in error against them stands on a different footing. He had offered to pay those *fi. fas.*, and he may, indeed *must* be presumed to have been ready and willing to do so whenever the sheriff would settle with him on the terms proposed. To such settlement we think he is entitled. To prevent misapprehension, we repeat, that we distinguish this case from the case of a claim of money actually in the sheriff's hands.

We think the charge of the Court on this point was erroneous, and for this reason, as for other errors specified, we reverse the judgment of the Court below.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court,

Glenn vs. Black et al.

that the judgment of the Court below be reversed, and a new trial ordered. First, on the ground that the *fi. fa.* under which the sheriff was alleged to have sold the property, for the purchase of which defendant is sought to be held liable, was neither put in evidence nor accounted for; and in this the verdict was contrary to law and the charge of the Court, and unsustained by evidence. Secondly, on the ground that the usees, who were plaintiffs in execution, placed in the sheriff's hands after the sale, and after the defendant had offered to settle with the sheriff according to his bid, are not entitled to this statutory remedy against a vigilant creditor, who purchased with reference to liens in the sheriff's hands, and with a view to secure his own debt; and that the other usees brought in by amendment are not entitled to this remedy against him, because before suit brought defendant had in good faith offered to pay their *fi. fas.* out of the purchase money.